IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| P.S., a minor by and through his parents and next friends, JARETT AND MINTA STEPHENSON, <br>       Plaintiffs <br><br> vs. <br><br> BROWNSBORO INDEPENDENT SCHOOL DISTRICT, <br>       Defendant | §§§§§§§§§§§ | CASE NO. 6:21-cv-427-JDK |

### REPORT AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant Brownsboro Independent School District's Second Motion to Dismiss (ECF 9). The motion is referred for proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b) (ECF 11). Having considered the motion and response, as well as the arguments of counsel at the hearing on the motion, it is recommended that the Second Motion to Dismiss be **DENIED in part and GRANTED in part**.

*Background*

Plaintiffs initiated this lawsuit against Brownsboro Independent School District ("BISD") on October 29, 2021, asserting claims pursuant to 42 U.S.C. § 1983 and Title IX. Defendant filed a motion to dismiss that was later denied as moot after Plaintiffs filed an amended complaint. In response to the First Amended Complaint (ECF 7), Defendant filed the Second Motion to Dismiss (ECF 9). The Court conducted a hearing on the motion on July 13, 2022. At the hearing, Plaintiffs

orally moved to voluntarily dismiss their § 1983 claims without prejudice and proceed only on the Title IX claims.[1]

Plaintiffs allege that P.S., a student enrolled in BISD and a member of the high school baseball team, was a victim of harassment and sexual assault during the 2019–2020 school year by fellow BISD students on the baseball team. Plaintiffs submit that the baseball team has a "long-standing hazing 'tradition'" for upperclassmen to subject freshmen players on the team to hazing.[2] Plaintiffs allege that the head coach of the baseball team and the other members of the baseball coaching staff were "well-aware of the hazing tradition" and heard the baseball players discuss hazing freshmen baseball players, yet "made no effort to stop the taunts or practice itself."[3] The taunts and threats allegedly included statements by students on the team that freshmen would be "tea bagged," held down and "dry humped," or that they would be sexually assaulted with a broomstick.[4] As a result, Plaintiffs submit that freshmen baseball players, including P.S., suffered anxiety.

Plaintiffs point to a specific baseball tournament during the last week of February 2020. Plaintiffs allege that the "hazing began" on Friday when the seniors required the freshmen, including P.S., to "carry equipment to the bus."[5] On the bus ride back to Brownsboro, Plaintiffs submit that four seniors followed a freshman, referred to as L.H., to his seat on the bus, "threw him down," and "dry humped him." On Saturday, Plaintiffs assert that three seniors on the team again "attacked L.H." while he was sitting approximately three rows behind the coaching staff with the interior lights on the bus illuminated.[6] Plaintiffs contend that the coaching staff had to

---

[1] Counsel for Plaintiffs stated at the hearing that the oral motion to voluntarily dismiss the § 1983 claims would be followed by a written motion, but no written motion has been filed.
[2] Plaintiffs' First Amended Complaint, ECF 7-2, at *12.
[3] *Id.* at *12–13.
[4] *Id.*
[5] *Id.* at *13.
[6] *Id.* at *13–14.

see and hear what occurred, including L.H.'s attempt to fight back, but they failed to take action to stop the behavior. The senior students then allegedly overpowered P.S., "forcibly spread P.S.'s legs and 'dry humped' him."[7] Plaintiffs complain that the coaching staff failed to intervene despite P.S.'s yelling during his attempt to fight off the students. Instead, Plaintiffs submit that Head Coach Wes Johnston "laughed, and told P.S., 'it looks like you have two daddies now.'"[8]

Following the February 2020 bus incident, P.S.'s parents complained to BISD administrators. Plaintiffs allege that the incident was recorded on bus video cameras and the video footage was viewed by Athletic Director Greg Pearson and Assistant Superintendent Brad Robertson.[9] Plaintiffs do not specify what action was taken in response to the complaint initiated by P.S.'s parents, but they state that the high school principal, Brent Cooper, "increased punishment for the seniors" after viewing the bus video footage.[10] Plaintiffs contend that they have since been told by BISD staff that the video was "purged and no longer existed."[11]

Plaintiffs allege that Coach Johnston and other coaching staff knew that there was a sexually hostile educational environment, were in "a position to both punish wrongdoers and prevent further harassment," and refused to take corrective action.[12] Plaintiffs further submit that BISD failed to complete a Title IX investigation, failed to follow their own policies and procedures, failed to reprimand the coaching staff, failed to report the sexual assault to appropriate authorities, and spoliated the video evidence.[13] Plaintiffs assert that P.S. was a victim of discrimination based upon sex and BISD created a hostile educational environment for P.S. in

---

[7] *Id*. at *14.
[8] *Id*.
[9] *Id*. at *15.
[10] *Id*.
[11] *Id*.
[12] *Id*. at *16.
[13] *Id*.

violation of Title IX. Plaintiffs contend that BISD's failures "made P.S. more vulnerable to the sexually harassing hazing incident he ultimately experienced."[14]

In response to the Amended Complaint, BISD filed its Second Motion to Dismiss (ECF 9) seeking dismissal of the complaint pursuant to FED. R. CIV. P. 12(b)(6). BISD asserts that Plaintiffs failed to allege facts sufficient to state a claim for sexual harassment or a sexually hostile educational environment under Title IX. BISD submits that Plaintiffs failed to allege facts showing that a BISD employee or official with supervisory power had actual knowledge of harassment. BISD argues that the baseball coaches are not "appropriate individuals" for purposes of the Title IX notice requirement.

BISD contends that it took appropriate action to investigate and discipline the students involved when it received actual notice of P.S.'s harassment. BISD states that Plaintiffs have not reported any further hazing, bullying or harassment of P.S. following the student disciplinary action taken concerning the February 2020 bus incident. Further, BISD asserts that Plaintiffs did not allege facts showing that the alleged harassment was based on sex, that P.S.'s harassment was severe, pervasive and objectively offensive or that BISD acted with deliberate indifference because there are no allegations of harassment after the conduct was reported to the appropriate BISD officials. To the extent Plaintiffs assert a Title IX claim on the basis that P.S. was rendered more vulnerable to the February 2020 bus incident due to BISD's failures, BISD argues that a general "heightened risk claim" is not recognized by the Supreme Court or the Fifth Circuit. Instead, a plaintiff must show an official policy or custom that created a heightened risk of sexual assault and Plaintiffs have not alleged those facts.

---

[14] Id. at *19–20.

Plaintiffs' response argues that the issues raised by BISD are not ripe for consideration prior to the completion of discovery. Plaintiffs submit that they sufficiently pled that P.S. is a male student protected by Title IX, that the offenders were students under BISD's control, that the head baseball coach knew about the hazing and did nothing about it, and that the harassment and assault suffered by P.S. were severe and pervasive. Plaintiffs assert that the determination of whether the head coach is an "appropriate individual" for purposes of Title IX notice is a fact-intensive inquiry that requires discovery.

Plaintiffs contend that they have met the severe and pervasive element due to the well-known hostile environment for freshmen on the baseball team and that BISD acted with deliberate indifference due to the head coach's failure to take action in the face of known harassment and the district's failure to investigate or discipline the coaching staff. Plaintiffs opine that discovery is likely to uncover many more incidents of hazing and BISD created a heightened risk that P.S. would be assaulted by ignoring a long history of sexual hazing on the baseball team. According to Plaintiffs, the superintendent and assistant superintendent were aware of the baseball team hazing and sexual assaults over the course of many years. Plaintiffs further allege that BISD spoliated evidence by destroying the bus recording of the February 2020 bus incident.[15]

*Applicable Law*

Defendant seeks dismissal of Plaintiffs' claims for failure to state a claim upon which relief may be granted pursuant to FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept all well-pleaded facts as true and view those facts in the light most favorable to the claimant. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010); *Ballard v. Wall*, 413 F.3d 510, 514 (5th Cir. 2005).

---

[15] Plaintiffs' spoliation allegation is not ripe for consideration until the parties have conducted discovery.

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, a complaint must include facts that "raise a right to relief above the speculative level," and into the "realm of plausible liability." *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 127 S.Ct. 1955, 1965 and 1966 n.5 (2007). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although detailed factual allegations are not necessary, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

*Discussion and Analysis*

**Constitutional Claims**

Plaintiffs orally moved to dismiss the claims brought pursuant to 42 U.S.C. § 1983 without prejudice. Defendants requested dismissal of the § 1983 claims with prejudice for failure to state a claim. Pursuant to FED. R. CIV. P. 41(a)(1)(A), a plaintiff may dismiss an action without a court order by filing a notice of dismissal before the opposing party serves an answer or a motion for summary judgment. A plaintiff has an "absolute right" to a Rule 41(a)(1) dismissal without prejudice before the filing of an answer or motion for summary judgment and the dismissal places

the plaintiff "in a legal position as if he had never brought the first suit." *Harvey Specialty & Supply, Inc. v. Anson Flowline Equipment, Inc.*, 434 F.3d 320, 324 (5th Cir. 2005). Here, BISD has neither filed an answer or a motion for summary judgment. The § 1983 claims should be dismissed without prejudice pursuant to Plaintiffs' oral notice of dismissal.

**Title IX Claims**

Plaintiffs also seek relief pursuant to Title IX. The statute expressly provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX "prohibits sex discrimination by recipients of federal educational funding." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173, 125 S.Ct. 1497, 1504 (2005). Title IX implies a private right of action encompassing intentional sex discrimination in the form of a federal educational funding recipient's deliberate indifference to sexual harassment of a student by another student. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 642, 119 S.Ct. 1661 (1999).

To establish liability on a school district for student-on-student harassment, a plaintiff must show that "the district (1) had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit," and (5) the district was deliberately indifferent to the harassment." *Sanches v. Carrollton-Farmers Branch Independent School Dist.*, 647 F.3d 156, 165 (5th Cir. 2011). "Same-sex sexual harassment is actionable under title IX." *Id*. "[R]ecipients of federal funding may be liable for 'subject[ing]' their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser

is under the school's disciplinary authority." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. at 646–47. Deliberate indifference is a high standard to meet. Title IX "does not require flawless investigations or perfect solutions," but only requires that school districts "must merely respond to known peer harassment in a manner that is not clearly unreasonable." *Id*. at 170; *see also Davis v. Monroe County Bd. of Educ.*, 526 U.S. at 649.

BISD contends that the district did not have actual knowledge of the harassment until P.S.'s parents reported the February 2020 bus incident and that the district took corrective action as soon as it learned of the harassment. On that basis, BISD argues that Plaintiffs have not alleged post-report facts to meet the elements of a Title IX claim. Plaintiffs plead, however, that the head baseball coach knew about a long history of harassment and sexual hazing on the baseball team by upperclassmen and failed to take corrective action. Further, Plaintiffs allege that the superintendent and assistant superintendent were aware of the hazing and sexual assaults that occurred on the baseball team over several years prior to P.S.'s assault.

For Title IX liability to attach in the absence of an official policy, the district—in the form of an "appropriate person"—must receive notice and an opportunity to rectify the situation. *Gebser v. Lago Vista ISD*, 524 U.S. 274, 290, 118 S.Ct. 1989, 1999 (1998). An "appropriate person" is, "at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Id*. District liability requires a showing that "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails to adequately respond." *Id*. Stated differently, to be an "appropriate person" under Title IX,

the official must have authority to both "repudiate th[e] conduct *and* eliminate the hostile environment." *Doe v. Edgewood ISD*, 964 F.3d 351, 360 (5th Cir. 2020).[16]

The roles and responsibilities of school officials vary among districts. Determining whether an individual meets the definition of an "appropriate person" for purposes of Title IX notice is necessarily a fact-intensive inquiry. *See, e.g., Doe v. Sch. Bd. of Broward Cty.*, 604 F.3d 1248, 1256 (11th Cir. 2010); see also *Murrell v. Sch. Dist. No. 1 of Denver*, 186 F.3d 1238, 1247 (10th Cir. 1999); *see also S.M. v. Sealy ISD*, 2021 WL 1599388, at *5 (S.D.Tex. April 23, 2021). Plaintiffs allege that the head coach knew that there was a long-term and ongoing environment of harassment and sexual assault, that he had the authority to take corrective measures and he failed to act or respond in any way to eliminate the hostile environment. Even further, Plaintiffs submit that the superintendent and assistant superintendent had similar knowledge and also failed to act. At this stage of the proceedings, taking the allegations as true and viewing the facts in the light most favorable to Plaintiffs, Plaintiffs have sufficiently pled the elements of a Title IX claim resulting from peer harassment. Whether Plaintiffs can ultimately substantiate those allegations with evidence remains to be seen and is not at issue in a Rule 12(b)(6) motion.

Plaintiffs additionally allege that the district created a "heightened risk," making P.S. more vulnerable to his eventual sexual assault, by allowing known hazing behavior to continue in the high school baseball program. BISD argues that Plaintiffs cannot proceed on a heightened risk theory of liability. In the context of an excessive punishment claim, the Fifth Circuit stated that it does not recognize a Title IX claim for a general "heightened risk" of discrimination, but the Court did not foreclose the possibility of potentially recognizing such a claim in the context of student-on-student sexual assault. *Poloceno v. Dallas ISD*, 826 Fed.Appx. 359, 363 (5th Cir. 2020). The

---

[16] See also *Rosa H. v. San Elizario ISD*, 106 F.3d 648, 661 (5th Cir. 1997) (quoting *Nash v. Electrospace Systems, Inc.*, 9 F.3d 401, 404 (5th Cir. 1993) (per curiam)).

Court noted that both the Ninth and Tenth Circuits recognize a heightened risk Title IX claim in the context of student-on-student sexual harassment or sexual assault. *See Simpson v. Univ. of Colo. at Boulder*, 500 F.3d 1170 (10th Cir. 2007); *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093 (9th Cir. 2020). The claim has similarly been recognized in the other districts in Texas. *See, e.g., Doe 1–10 v. Baylor University*, 240 F.Supp.3d 646, 661 (W.D.Tex. Mar. 7, 2017); *Roe v. Cypress-Fairbanks ISD*, 2020 WL 7043944 (S.D.Tex. Dec. 1, 2020).

Instead of requiring proof of actual knowledge and deliberate indifference by the district, a heightened risk claim requires proving that an official policy or custom of the educational institution created a heightened risk of sexual assault. *Simpson v. Univ. of Colo. at Boulder*, 500 F.3d at 1177–78; *Doe 1–10 v. Baylor University*, 240 F.Supp.3d at 661. The proper inquiry is "whether the defendant-institution's policy or custom inflicted the injury of which the plaintiffs complain." *Doe 1–10 v. Baylor University*, 240 F.Supp.3d at 661. For purposes of a heightened risk claim, it is not enough to allege that a school district "tolerated a culture of hazing" prior to the alleged assault. *Doe I on Behalf of Doe II v. Huntington ISD*, 2020 WL 10317505, at *5 (E.D.Tex. Oct. 5, 2020) ("Plaintiff has not alleged enough concrete facts to establish that [the district] had an official policy or custom of ignoring *sexual assault* as opposed to mere hazing."). Like the *Huntington ISD* case, Plaintiffs assert conclusory statements that the district had knowledge, but the amended complaint is "missing facts tending to show that [the district] ignored reports of *sexual* assault or harassment within the athletics department." *Id*. (emphasis in original). There are no allegations, for example, that students reported sexual assaults prior to P.S.'s alleged sexual assault and the district maintained a policy of mishandling those reports. *See, e.g., Doe 1–10 v. Baylor University*, 240 F.Supp.3d at 661. Here, Plaintiffs do not identify an official policy

or custom of BISD that created a heightened risk that P.S. would be sexually assaulted. The heightened risk Title IX claim should be dismissed for failure to state a claim.

## RECOMMENDATION

It is hereby **RECOMMENDED** Plaintiffs' § 1983 claims be dismissed without prejudice pursuant to Plaintiffs' oral notice of dismissal of those claims. It is further **RECOMMENDED** that the Second Motion to Dismiss (ECF 9) be **DENIED in part and GRANTED in part**. The motion to dismiss should be granted as to Plaintiffs' heightened risk Title IX claim and denied in all other respects.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 25th day of August, 2022.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE